IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALVIN RAY BICKHAM                                                                       PETITIONER

v.                                       Civil No. 2:19-cv-02134-PKH-MEF

ANDREW M. SAUL, Commissioner,                                                            DEFENDANT
Social Security Administration

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Alvin Bickham, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) partially granting his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.   Procedural Background

Plaintiff filed his application for DIB on January 18, 2017, alleging a disability onset date of June 1, 2016, due to a metal left hip, a heart stent, lower back deterioration, and arthritis in his hands. (ECF No. 9, pp. 66-67, 157-65, 182). His application was denied initially by the Commissioner on May 17, 2017, and again upon reconsideration on June 19, 2017. (*Id*., pp. 89-91, 95-96). Plaintiff filed a written request for a hearing on July 18, 2017. (*Id*., pp. 97-98). Administrative Law Judge ("ALJ") Clifford Shilling held an administrative hearing on April 20, 2018. (*Id*., pp. 28-64). Plaintiff was present and represented by counsel.

Plaintiff was born on July 24, 1963, making him 52 years and 10 months old on his alleged onset date. (*Id*., pp. 66, 178). He had a ninth-grade education and past relevant work ("PRW") as a sandblaster, dry wall finisher, and commercial painter. (*Id*., p. 179).

1

On February 27, 2019, the ALJ entered a partially favorable decision, concluding Plaintiff became disabled on July 24, 2018, the date of his 55th birthday. (*Id*., pp. 15-23). Prior to July 24, 2018, he found Plaintiff capable of performing light work as defined in 20 C.F.R. § 404.1567(b), except he could frequently reach bilaterally and operate foot controls. (*Id*., pp. 18-21).

Plaintiff's request for review was denied by the Appeals Council on August 28, 2019. (*Id*., pp. 5-9). Subsequently, he filed this action on October 22, 2019. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 15, 16), and the case is now ready for decision.

## II.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents

him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

In a single issue on appeal, Plaintiff contends that a borderline age situation exists and the ALJ erred by mechanically applying the category of a "person closely approaching advanced age." Following a thorough review of the record, the undersigned recommends affirming the ALJ's decision.

At step five in the sequential evaluation, the ALJ may use the Medical-Vocational Guidelines ("the Grids") as guidance in determining a Plaintiff's RFC. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The Grids consist of a list of vocational profiles that, when applicable, direct an ALJ to find a claimant either disabled or not disabled. *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011); 20 C.F.R. Part 404, Subpt. P, App. 2. If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of criteria found in Appendix 2 to Part 404, then the ALJ must reach the conclusion directed by the relevant line of the applicable Grid. *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993); 20 C.F.R. Part 404, Subpt. P, App. 2. If a claimant suffers from only exertional impairments, the Commissioner may refer to the Grids to conclude whether the claimant has the RFC to perform work which exists in significant numbers in the national economy. *Pearsall v. Massanari*, 274 F.3d 1211, 1219-1220 (8th Cir. 2001); *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir.1999). If a claimant has non-exertional impairments, the Guidelines generally are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence, such as vocational testimony. *Pearsall*, 274 F.3d 1219-1220; *Gray*, 192 F.3d at 802.

### A. Borderline Situation

Under the Grids, three age categories are specified: a younger person (under age 50), a person closely approaching advanced age (ages 50–54), and a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). If the claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that the claimant is disabled, a borderline situation exists and the ALJ must consider whether to use the older age category after evaluating the overall impact of the factors of the case. 20 C.F.R. § 404.1563(b). Aside from the "a few days or months language" cited in the statute,

exactly what constitutes a borderline situation is not clearly defined by statute or regulation. *Phillips*, 671 F.3d at 703. And, although not binding on the Court, the Commissioner's Hearings, Appeals, and Litigation Law Manual[1] (the HALLEX) provides us with some guidance. The HALLEX prescribes a two prong test: (1) Is the claimant's age within a few days or a few months of the next higher age category?, and (2) Will the higher age category result in a decision of disabled as opposed to not disabled? *See* Soc. Sec. Admin., HALLEX I-2-2-42(B), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html. If the answer to one or both questions is no, then either a borderline situation does not exist, or it would not affect the outcome of the case. *Id*. The ALJ must then use the Plaintiff's chronological age. *Id*. If the answer to both questions is yes, a borderline situation exists, and the ALJ must determine whether to use the higher age category. *Id*.

According to the HALLEX, the ALJ must determine whether the Plaintiff will reach the higher age category within a few days or months after one of the following dates: the date of adjudication; the date last insured; the end of disabled widow(er)'s benefit prescribed period; the end of child disability re-entitlement period; or, the date of cessation of disability. HALLEX I-2-2-42(B)(1). These dates are also used to determine the onset date, if the ALJ uses the higher age category and finds the Plaintiff disabled. *Id*. at (C)(4).

The Eighth Circuit has declined to draw a bright line regarding the definition of the phrase "a few days or months." *See Phillips*, 671 F.3d at 703 (refusing to make a rule, but finding a

---

[1] Courts differ on the effect of the HALLEX. *See Moore v. Apfel,* 216 F.3d 864, 868–69 (9th Cir. 2000) (holding the HALLEX does not have the force and effect of law and is not binding on the Commissioner) (citing *Schweiker v. Hansen,* 450 U.S. 785, 789, (1981) (per curiam) (holding that rules in claims promulgated for claims representatives do not bind the Social Security Administration)); see also *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000) (holding although the HALLEX does not carry the authority of law, "'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required ) (quoting *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981)). *See also Starr v. Apfel,* 2008 WL 4402195, n. 1 (E.D.Mo.) (recognizing a circuit split as to whether or not the HALLEX is binding law).

borderline situation existed when claimant was four months shy of turning 55 years old and had no past relevant work). Other courts, however, have held that with the appropriate showing, persons up to six months away from the next age category may be considered borderline. *See Lewis v. Comm'r of Soc. Sec.,* 666 F. Supp. 2d 730, 738 (E.D. Mich. 2009) ("Generally, courts hold that a person within six months of the next higher age category is considered 'borderline.'"); *Gallagher v. Astrue*, 2009 WL 929923, at \*6 (D.N.H. April 3, 2009) ("Although the courts have varied in their interpretation of in what period of time the borderline range falls, the general consensus is that the borderline range falls somewhere around six months from the older age category.") (internal quotation marks and citation omitted). *But see Woods v. Chater*, 1996 WL 570490, at \*5 (N.D.Cal. Sept. 27, 1996) (four months was found to not be borderline under the circumstances of the case).

Here, Plaintiff is seeking benefits based on his age as of the date of the administrative hearing held on April 20, 2018. On that date, he was 53 days shy of his 55th birthday. However, according to the HALLEX the relevant dates are the date of adjudication and Plaintiff's date last insured. HALLEX I-2-2-42(B)(1). The ALJ found Plaintiff to be disabled as of July 24, 2018, his 55th birthday, and entered a partially favorable decision on February 27, 2019. Further, on December 31, 2021, Plaintiff's date last insured, Plaintiff was receiving benefits. Thus, it is clear the ALJ properly considered Plaintiff's age. As Plaintiff was more than a few days to months from reaching his 55th birthday on both his alleged date of onset (June 1, 2016) and his application date (January 18, 2017), and he had been awarded benefits by the date of the ALJ's decision and his date last insured, we find no error in the ALJ's application of the age categories in this case.

We also note that the ALJ did not rely on the Grids to find the Plaintiff not disabled prior to July 24, 2018. Instead, the ALJ relied upon the testimony of a vocational expert ("VE") in

determining whether Plaintiff was disabled. Thus, there is no issue of application, much less "mechanical" application, of the Grids or of the age categories. *Gilmore v. Colvin*, 2013 WL 2154926, *3-4 (W.D. Ark. May 17, 2013) (finding Grids not applied where ALJ relied on VE testimony to find Plaintiff not disabled).

### B. Vocational Adversity

However, even if we considered Plaintiff's age on the date of the administrative hearing and found that it was within a few days to months of his 55th birthday, the analysis would not end there. According to the regulations, an individual closely approaching advanced age (age 50–54), with a severe impairment(s) may be seriously affected in their ability to adjust to other work. 20 C.F.R. § 404.1563 (d). Limited work experience further erodes their ability to adjust. *Id*. Thus, when considering a borderline age case, the ALJ must also consider whether significant vocational adversities exist that would warrant applying the higher age category. *See Phillps*, 671 F.3d at 703; HALLEX I-2-2-42(C)(2). And, according to the HALLEX, the Plaintiff must show that those factor(s) have progressively more adverse impact on his ability to adjust to other work as the period between his actual age and the attainment of the next higher age category lengthens. HALLEX I-2-2-42(C)(3).

Plaintiff contends the ALJ's finding that he could not return to his PRW constitutes a vocational adversity that supports the use of the higher age category rather than his chronological age. In the *Phillips* case, the Eighth Circuit concluded that the absence of any past relevant work constituted a vocational adversity warranting using of the higher age category. *Phillips*, 671 F.3d at 703. Here, however, Plaintiff has PRW, having previously performed the jobs of sandblaster, dry wall applicator, dry wall finisher, and commercial painter. (ECF No. 9, pp. 21, 39-45, 199-202). Further, despite his impairments, the ALJ found him capable of performing work as a cashier

7

2, price marker, and plastics molding machine tender.  (*Id*. at 22).  Thus, unlike in the *Phillips* case, Plaintiff has an extensive work history and was found capable of performing other work that exists in the national economy.  As such, we do not find his work history to be a vocational adversity.

Plaintiff also insists that his bilateral shoulder pain qualifies as a vocational adversity warranting application of the higher age category.  Again, we disagree.  Plaintiff testified that the "rotary cuffs in his shoulders are deteriorating."  (ECF No. 9, p. 34-35).  Despite records documenting treatment for osteoarthritis, the medical evidence shows his condition remained stable until he was found disabled on July 24, 2018.  (ECF No. 9, pp. 400-474).

On May 3, 2017, Dr. Michael Westbrook conducted a general physical exam.  Despite complaints of pain in his left shoulder, Dr. Westbrook documented a normal range of motion in both shoulders with no muscle spasm, weakness, or atrophy.  He diagnosed a history of total left hip replacement, coronary artery disease with a stent, back pain, and arthralgia in the hands and assessed mild to moderate limitations.  (*Id*. at 380-385).

On May 16, 2017, Dr. Patrick Fields reviewed the evidence of record and concluded Plaintiff could perform light work.  (*Id*. at 72-74).  On June 19, 2017, Dr. Clarence Ballard conducted an independent review of the record and concurred with Dr. Fields' assessment.  (*Id*. at 84-86).

On July 11, x-rays of his right shoulder revealed some mild degenerative change and minimal calcification, but his left shoulder was unremarkable.  (*Id*. at 430-433).

On September 5, 2017, Plaintiff underwent nerve conduction studies of his upper extremities revealing bilateral carpal tunnel syndrome and bilateral median motor neuropathy.  (*Id*. at 407-408).

On November 27, 2017, Plaintiff was treated by Nurse Practitioner, Julie Greek, requesting a referral to pain management for back, hip, and generalized joint pain. He admittedly smoked marijuana to help deal with the pain and wanted a medical marijuana card to do so legally. Nurse Greek noted degenerative disk disease of the spine, a history of hip replacement, and arthritic changes in his shoulder, as well as recent carpal tunnel surgery on the right hand with 90% improvement. An exam revealed pain with full range of motion and weight bearing in the shoulders. (*Id*. at 404-406).

On February 23, 2018, Plaintiff visited Dr. Danny Silver, a pain management specialist, complaining of pain in the shoulders, lower back, left hip, legs, hands, and feet. On a typical day, he rated his pain as a 5 on a 10-point scale and stated that it interfered with his ability to sleep. An examination revealed crepitus in both shoulders. He prescribed Hydrocodone and Gabapentin. (*Id*. at 474-480).

On March 21, 2018, Patricia Rich, Nurse Practitioner for Dr. Silver, administered bilateral shoulder injections for a diagnosis of osteoarthritis. Plaintiff reported immediate pain relief and an improved range of motion. (*Id*. at 470-473).

On March 26, Plaintiff returned with complaints of bilateral shoulder pain, hip pain, and back pain. He rated his typical pain as a 5/10, stating that his shoulder pain often interfered with his ability to sleep. Nurse Rich noted shoulder crepitus, painful abduction, and a negative Apley's scratch test, and documented post injection improvement in Plaintiff's pain. She prescribed Gabapentin and Hydrocodone. (*Id*. at 464-469).

On April 4, Plaintiff received trigger point injections into his lumbar erector spinae, thoracolumbar fascia, gluteus aponeurosis. A musculoskeletal exam continued to reveal bilateral shoulder crepitus and painful abduction with no range of motion deficits. (*Id*. at 460-463).

On April 18, Plaintiff visited Nurse Rich in follow up regarding his trigger point injections. Plaintiff reported improvement in his symptoms. His shoulder exam remained unchanged and Nurse Rick administered a trigger point injection into his right sacroiliac joint. (*Id*. at 456-459).

On April 23, Plaintiff visited Dr. Silver for complaints of shoulder pain, hip pain, and back pain, rating his typical pain as a 5/10. Plaintiff reported improvement in his personal life, sleep, mood, and overall functioning. He also indicated that he enjoyed working in the yard and had been helping to care for his 77-year-old mother. Dr. Silver noted continued crepitus in the shoulders with painful abduction. He increased Plaintiff's Hydrocodone dosage and refilled his Gabapentin. (*Id*. at 450-455).

On May 21, Plaintiff rated his average pain as a 3/10. Nurse Rich documented an unchanged shoulder exam, noted that the trigger point injections were working well, and refilled Plaintiff's Hydrocodone and Gabapentin dosages. (*Id*. at 441-446).

On June 18, Plaintiff rated his typical pain as a 3/10. He indicated that the injections had helped to reduce his pain "quite a bit." Plaintiff was spending more quality time with family and friends, pursuing hobbies and leisure activities, and helping to care for his elderly mother. His shoulder exam remained stable, and Nurse Rich refilled his prescriptions. (*Id*. at 539-544).

On June 20, Plaintiff reported continued improvement in response to therapy. Plaintiff's shoulder exam remained stable and he received trigger point injections into his trapezius and rhomboid muscles. (*Id*. at 531-534).

As for his activities of daily living, Plaintiff was very independent. He reported the ability to care for his personal hygiene, help with the care of his daughter, prepare meals, perform household chores, work in the yard, drive, go out alone, shop in stores, and handle his own

finances. (*Id*. at 189-196). As previously mentioned, he also told Dr. Silver that he helped care for his elderly mother.

Prior to July 24, 2018, the ALJ found the Plaintiff capable of performing light work with frequent bilateral reaching and operation of foot controls. (*Id*. at 18). The ALJ noted Plaintiff's complaints of chronic pain in both shoulders, as well as the x-rays showing no more than degenerative change and minimal calcification. Physical exams showed crepitus and some pain with abduction, but Plaintiff's shoulders remained stable over the relevant period. Although Plaintiff was prescribed narcotic pain medication and trigger point injections into various areas, including his shoulders, his pain was responsive to this treatment. Plaintiff reported good overall improvement in his symptoms with treatment. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

After thoroughly reviewing the evidence, we do not find that Plaintiff's shoulder impairment constitutes a vocational adversity that would warrant the application of the advanced age category. We find the ALJ correctly applied Plaintiff's chronological age until July 24, 2018, when the Plaintiff turned 55 and became an individual of advanced age.

## IV. Conclusion

Based on the foregoing, we recommend affirming the ALJ's decision and dismissing the Plaintiff's Complaint with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties**

**that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of August 2020.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE